```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
ANNE PENACHIO and PATRICK J. CARR    :
                                     :    10 Civ. 371 (SCR) (PED)
                      Plaintiffs,    :
                                     :    MEMORANDUM AND ORDER
           -against-                 :
                                     :
DIANE BENEDICT and VERONIQUE VAN     :
PELT,                                :
                                     :
                      Defendants.    :
------------------------------------x
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/9/10

MAILED TO pro se / COUNSEL

LORETTA A. PRESKA, Chief United States District Judge:

Plaintiffs Anne Penachio and Patrick J. Carr ("Plaintiffs), proceeding pro se, bring this diversity action against Defendants Diane Benedict and Veronique Van Pelt ("Defendants") alleging defamation. On February 5, 2010, Defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. [Dkt. no. 5]. On July 6, Magistrate Judge Paul E. Davison issued a Report and Recommendation ("Report") recommending that this Court grant Defendants' motion. [Dkt. no. 20]. On July 22, Plaintiffs filed objections to the Report. [Dkt. nos. 21 & 22]. For the reasons that follow, the Court adopts the Report and grants Defendants' motion to dismiss.

I.   BACKGROUND

This action arises from Plaintiffs' representation of Elena Duke Benedict ("Ms. Benedict"), the mother and grandmother of

1

Defendants Benedict and Van Pelt, respectively, in proceedings in Westchester County Supreme Court. (Complaint ("Compl.") at ¶¶ 1-9). Plaintiffs are attorneys residing in New York State. (Compl. ¶¶ 1-2). Defendants are residents of Colorado. (Compl. ¶¶ 3-4).

In late 2008, Defendants published three videos on the internet website YouTube. (Compl. ¶¶ 10-18). In the video, Defendants accused Plaintiffs of various acts of professional misconduct, including stealing over three million dollars from Ms. Benedict. (Compl. ¶¶ 10-18). Defendants attended some court proceedings in New York State and spoke with some of the parties involved in the litigation but recorded and published the video in Colorado. (Defendants' Memorandum of Law in Support of Motion to Dismiss ("Def.'s Mem." at 2).

Although Defendants were not parties to the guardianship proceeding, Plaintiffs allege that Defendants have a commercial interest in the outcome of the litigation. (Plaintiff's Objections to the Report and Recommendation ("Pl.'s Obj.") at 2). Additionally, while observing the guardianship proceeding, Defendants negotiated an "inchoate agreement" attempting to settle a debt owed to Ms. Benedict. ("Pl.'s Obj. at 2). Defendants have no other contacts with New York State.

On February 5, 2010, Defendants moved to dismiss the complaint pursuant to Rule 12(b)(2). [Dkt. no. 5]. On July 6,

2

Magistrate Judge Davison recommended that the Court grant the motion on the grounds that Defendants were beyond the reach of New York's long arm statute. [Dkt. no. 20]. On July 22, Plaintiffs filed their objections to the Report arguing that the Court may exercise jurisdiction over Defendants pursuant to § 302(a)(1) of the New York Civil Practice Law and Rules. [Dkt. nos. 21 & 22].

## II. STANDARD OF REVIEW

A district court may designate a magistrate judge to hear and determine certain motions and to submit to the court proposed findings of fact and a recommendation as to the disposition of the motions. See 28 U.S.C. § 636(b)(1). Within fourteen days of service of the recommendation, any party may file written objections to the magistrate judge's report.[1] Id. In evaluating the report, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.

A district court should adopt a Magistrate Judge's report and recommendation when no clear error appears on the face of the record. See Nelson v. Smith, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985). If a party objects to the report and

---

[1] The Report granted the parties "seventeen (17) working days" to file objections. (Report at 10-11). Plaintiffs filed their objections after the fourteen day window contemplated by § 636(b)(1), but within the period designated in the Report. The Court excuses Plaintiffs' untimely filing because Plaintiffs complied with the instructions in the Report.

3

recommendation, however, the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); see also Jackson v. Goord, 664 F. Supp. 2d 307, 310 (S.D.N.Y. 2009).

### III. LEGAL STANDARD FOR A MOTION TO DISMISS

"The plaintiff bears the burden of establishing that the court has jurisdiction over the defendant when served with a Rule 12(b)(2) motion to dismiss." Whitaker v. American Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001). The plaintiff can satisfy this burden by making a prima facie showing of jurisdiction. Jazini v. Nissan Motor Co. Ltd., 148 F.3d 181, 184 (2d Cir. 1998). If the plaintiff attempts to make this showing through affidavits, "all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." A.I. Trade Finance, Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993).

In assessing whether personal jurisdiction is authorized, "the court must look first to the long-arm statute of the forum state, in this instance New York." Bensusan Rest. Corp. v. King, 126 F.3d 25, 27 (2d Cir. 1997). "If the exercise of jurisdiction is appropriate under that statute, the court must decide whether such exercise comports with the requisites of due process." Id. The Court will not address the due process

4

argument because the Report properly concluded that New York's long arm statute does not reach Defendants.

IV. DISCUSSION

Plaintiffs object to the Report on the grounds that Magistrate Judge Davison erroneously interpreted § 302(a)(1) of the New York Civil Law and Practice Rules. Section 302(a)(1) states that a court in New York may exercise personal jurisdiction over any person who "transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1). To determine whether personal jurisdiction is exists under § 302(a)(1), the Court must determine "(1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction." Best Van Lines, Inc. v. Walker, 490 F.3d 239, 246 (2d Cir. 2007) (citing Deutsche Bank Sec., Inc. v. Montana Bd. of Invs., 7 N.Y.3d 65, 71 (2006)).

For the first prong, exercising personal jurisdiction over a foreign defamation defendant is proper only if the plaintiff can identify "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Best Van Lines, 490 F.3d at 246 (internal quotation

5

marks and citations omitted); see also Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 457 (1965).

For the second prong, "[a] suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." Henderson v. INS, 157 F.3d 106, 123 (2d Cir. 1998) (internal quotation marks omitted); see also Deutsche Bank, 7 N.Y.3d at 71.

### A. Defendants Did Not Purposefully Avail Themselves of the Privilege of Doing Business in New York

#### 1. Business Transaction

Defendants did not engage in a business transaction. In an ordinary, non-defamation context, factors to consider in a "doing business" inquiry include whether the defendant maintains offices and bank accounts, employs agents, and regularly solicits business in New York. See, e.g., Bryant v. Finnish Nat'l Airline, 208 N.E.2d 439, 441-42 (N.Y. 1965). In the context of defamation claims, doing business is construed more narrowly. Best Van Lines, 490 F.3d at 248; Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs., 7 N.Y.3d 65, 71 (2006); see also Realuyo v. Villa Abrille, No. 01-civ.-10158 (JGK), 2003 WL 2153774, at *3 (S.D.N.Y. July 8, 2003) (foreign defamation defendant did not do business in New York where defendant paid

for apartment, maintained bank account, and often traveled to New York in connection with a beef importing business). Construing "doing business" narrowly, the Court cannot conclude that observing a courtroom proceeding and negotiating an inchoate settlement agreement, coupled with Defendants' alleged commercial interest in the outcome of the litigation, qualifies as a business transaction. Therefore, the Court lacks personal jurisdiction over Defendants because Defendants did not engage in a business transaction in New York State.

2. Purposeful Availment

Even if Defendants' conduct were a business transaction, Defendants did not purposefully avail themselves of the privilege of doing business in New York and thus cannot be subject to personal jurisdiction in New York courts. "[T]he posting of defamatory material on a website accessible in New York does not, without more, constitute 'transact[ing] business' in New York for the purposes of New York's long-arm statutes." Best Van Lines, 490 F.3d at 250. Plaintiffs argue that the "something more" referenced in Best Van Lines refers to the purposeful availment requirement. (Pl.'s Obj. at 3). Plaintiffs further contend that "something more" means "something sought to be accomplished by defendants in New York such as the defeat of a guardianship proceeding." (Pl.'s Obj. at 3 n.1).

7

To the contrary, the quantum of "something more" needed to satisfy the "purposeful avail[ment]" requirement entails a stronger connection between the defamatory act and Defendants' alleged business activities in New York State. For example, in Legros v. Irving, personal jurisdiction over a foreign defamation defendant was proper because "virtually all the work attendant upon publication of the book [containing the alleged libel] occurred in New York[.]" 38 A.D.2d 53, 56 (1st Dep't 1971). Thus, the rule from Legros shows that purposefully availing oneself of the privilege of doing business in New York not only requires extensive in-state activities relating to the defamatory act but also a specific connection between the defamatory act and activities undertaken by the defendant in New York. Here, however, virtually no relevant acts undertaken by Defendants in publishing the defamatory statement occurred in New York. Thus, the Court cannot exercise personal jurisdiction over Defendants.

The Report's analysis of SPCA of Upstate New York, Inc. v. American Working Collie Assoc., 903 N.Y.S.2d 562 (3d Dep't June 3, 2010), is correct and dispositive in this matter. In SPCA, the foreign defendant's defamatory comments on a website, coupled with phone calls to New York and donation of money to a New York entity, were insufficient to permit jurisdiction under § 302(a)(1). SPCA, 903 N.Y.S.2d at 565. Applying SPCA to the

8

facts in this case yields the same result: while Defendants have observed proceedings in New York, contacted parties to the proceedings, and allegedly have some profit-making objective related to proceedings, the connection between the defamatory act and Defendants' dealings in New York is insufficient to warrant a finding that Defendants purposefully availed themselves of the privilege of doing business in New York.

Other cases exercising personal jurisdiction over defamation defendants under § 302(a)(1) demonstrate how Defendants' conduct does not rise to the level of purposeful availment. The facts in Montgomery v. Minarcin largely parallel the facts of Legros. The defendant worked as a journalist in New York State and was conducting journalistic activities inside the state, ultimately leading to defamatory statements being made against the plaintiff. 263 A.D.2d 665, 667-68 (3d Dep't 1999). The defendants satisfied the purposeful availment requirement because the preparation and publication of the defamatory statements were so strongly linked. See id.; see also GTP Leisure Prods. v. B-W Footwear Co., Inc., 55 A.D.2d 1009, 1010 (4th Dep't 1977) (upholding personal jurisdiction where the defamatory statements were a "decisive ingredient" in a failed business transaction between the parties).

Legros, Minarcin, and GTP Leisure, read in conjunction with Best Van Lines and SCPA, show conclusively that Defendants are

9

not subject to personal jurisdiction in this Court. The preparation and dissemination of the defamatory material occurred outside of New York. Although the videos bear a relationship to the proceedings in New York and Defendants' alleged commercial interest in New York, Defendants' interaction with New York during the publication of the videos is too marginal to rise to the level of purposeful availment. Therefore, the Court cannot exercise personal jurisdiction over Defendants because Defendants did not purposefully avail themselves of the privilege of doing business within the State.

### B. Arising From a Business Transaction

Plaintiffs' defamation claim is too tenuously related to any of Defendants' purported business transactions in New York State. New York courts cannot assert personal jurisdiction over foreign defamation defendants if the defamation "claim did not arise from the defendants' specific business transactions in New York." Realuyo v. Villa Abrille, No. 01-civ.-10158 (JGK), 2003 WL 2153774, at *6 (S.D.N.Y. July 8, 2003). For example, in Talbot v. Johnson Newspaper Corp., a New York newspaper published defamatory letters and an interview given by a California resident concerning a teacher at the university she attended in New York. 71 N.Y.2d 827, 828. Plaintiff uttered all of the defamatory outside of New York State. Id. Without addressing whether the defendant had engaged in a business

10

transaction, the court held that the defamation claim did not arise from a transaction in New York because there was an insufficient nexus between the defendant's out-of-state conduct and the in-state publication. Id. at 829.

Similarly, in American Radio Ass'n, AFL-CIO v. A.S. Abell Co., the court noted that even though the foreign defendant newspaper company transacted business in New York, "[t]he acts of publication, of distribution and of circulation which underlie the alleged grievances occurred in Baltimore and not here." 296 N.Y.S.2d 21, 23 (N.Y. Sup. Ct. 1968).

Plaintiffs object to the Report's conclusion that Defendants' conduct did not arise from a business transaction in New York because "the Internet postings: 1) were directly caused by and related to activities involving the guardianship proceeding in New York; 2) occurred during the pendency of the appeal of that proceeding; and 3) were addressed to a specified New York audience." (Pl.'s Obj. at 11). Nonetheless, the dispositive facts in American Radio Ass'n and the facts here are identical: the production, publication, and circulation of the defamatory statements occurred outside of New York State. Therefore, Defendants are not subject to the long arm jurisdiction of New York courts because the defamatory statements did not arise from a business transaction in New York State.

11

## V.   CONCLUSION

For the foregoing reasons, the Report is adopted and Defendants' motion to dismiss [dkt. no. 5] is GRANTED. Plaintiffs' claims are dismissed without prejudice. The Clerk of the Court shall mark this action closed and all pending motions denied as moot.

SO ORDERED:

DATED:   New York, New York
         November 9, 2010

_____
LORETTA A. PRESKA, Chief U.S.D.J.